IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JENNIFER TIPTON and SLEEKEZ, LLC, a Wyoming limited liability company,<br><br>Plaintiffs/Counterdefendants,<br><br>vs.<br><br>HAL HORTON,<br><br>Counterclaimant/Defendants. | CV 19-25-BLG-SPW<br><br>ORDER |

## I. BACKGROUND

On October 5, 2021, the Court found that Defendant and Counterclaimant Hal Horton ("Horton") had violated the Court's August 28, 2019, Judgment (Doc. 31), which contained a permanent injunction (the "Permanent Injunction"), by selling animal grooming brushes with sawtooth blades on or after August 28, 2019 (Doc. 53, at 3, 5-6).

Based on Horton's willful and deliberate violations, the Court held Horton in civil contempt (the "Contempt Order") and awarded Plaintiffs and Counterdefendants Jennifer Tipton ("Tipton") and SleekEZ, LLC ("SleekEZ," and collectively "Plaintiffs") damages including:

- Requiring Horton to disgorge "all profits from Horton's sales of animal grooming brushes with sawtooth, bandsaw, or hacksaw type blades on or after August 28, 2019," (*id.* at 6, ¶ 3);

- "[P]unitive damages, calculated as a twenty-five percent (25%) increase to the disgorgement of profits award," (*id.* at 6, ¶ 4);

- "[R]easonable attorney's fees and costs for the Motion [for Order to Show Cause] and any related proceedings thereto, including damages discovery and enforcement proceedings," (*id.* at 7, ¶ 5).

The Court also ordered Horton, within fourteen (14) days, to "produce and serve Plaintiffs with all receipts, invoices, spreadsheets, bank statements, PayPal account statements, online or digital data, or any other documents or electronically stored information showing Horton's sales of animal grooming brushes on or after August 28, 2019." (*Id.* at 7, ¶ 6). The Court ordered that "Horton shall produce responsive documents or electronically stored information whether possessed by himself, Groom Ninja, or any other person or entity on behalf of Horton's Groom Ninja business." (*Id.*).

The Court further granted Tipton and SleekEZ the right to conduct a forensic audit of Horton's business records to determine the accuracy of Horton's sales information and production. (*Id.* at 8, ¶ 8).

The Court finally ordered Plaintiffs to file, within forty-five (45) days of the date of the Contempt Order, a brief setting forth the total damages requested. (*Id.* at 8, ¶ 9). The Court also set a hearing for December 10, 2021, to determine the amount of damages owed to Plaintiffs.

In the interim, the parties jointly requested and stipulated to two extensions of the deadlines—first, due to Horton's incomplete sales disclosures, and second, to accommodate Horton's chosen deposition date of February 15, 2022. (Docs. 55 and 58). The Court granted both extensions. (Docs. 56 and 59). A hearing was set for April 1, 2022 at 9:30 am. (Doc. 59).

On March 14, 2022, Tipton and SleekEZ filed Plaintiffs' Brief in Support of Application for Disgorged Profits, Punitive Damages, and Attorney's Fees (the "Application for Damages"). (Doc. 60). Horton did not file an opposition to Plaintiffs' Application for Damages.

On March 30, 2022, Tipton and SleekEZ filed a Supplement to Declaration of Eric D. Hone, which included attorney invoices (the "Supplement"). (Doc. 61). Horton did not file an opposition to the Supplement.

On the afternoon of March 29, 2022, less than one day before the April 1, 2022, 9:30 am hearing in this matter, Horton called the Court's chambers and informed them that he was still in California and could not appear in person at the hearing. Horton had received proper notice of this rescheduled hearing date.

Without filing the proper motions, Horton then requested the Court allow him to appear by Zoom video conference. Given that Horton is appearing *pro se*, and given the Court's desire to preserve judicial economy and move this matter forward, the Court allowed Horton to appear by Zoom video conference at the hearing the next morning.

On April 1, 2022, the Court held a hearing on Plaintiffs' Application for Damages (the "Hearing"). (*See* Doc. 62). The Court heard arguments by Horton and Plaintiffs' attorneys. Horton did not submit any evidence prior to the Hearing and did not have any documents or other evidence prepared to submit to the Court at the Hearing. This occurred despite Horton being given ample opportunity to submit evidence to the Court, including a 113-day extension to briefing and hearing deadlines and allowing Horton to submit evidence at the Hearing, which he did not come prepared to do.

On April 11, 2022, Plaintiffs submitted a Second Supplement to the Declaration of Eric D. Hone, detailing additional fees incurred between March 1 and April 6, 2022, related to the Contempt Order proceedings, and consistent with representations made by counsel on behalf of Plaintiffs during the Hearing.

Based upon the briefing, and the declarations, exhibits, and supplements related thereto, and arguments made before the Court, the Court makes the following findings of fact and conclusions of law, and orders as directed below.

## FINDINGS OF FACT

Based upon Horton's failure to file any opposition to Plaintiffs' filings and failure to submit any evidence to the Court at the Hearing in support of his defenses, the Court finds the following facts are undisputed:

### *A. Facts Regarding Horton's Disclosures and the Discovery Plaintiffs Conducted*

1. Horton failed to produce any records to Plaintiffs by the October 19, 2021 deadline as ordered by the Court in the Contempt Order. (*See* Doc. 53, at 7, ¶ 6; Doc. 60-1, at 3-4).

2. After being notified by Plaintiffs' attorneys of his failure to abide by the Court's Contempt Order, on October 26 and 27, 2021, Horton produced an excel spreadsheet of sales information from his Shopify account, a PayPal report for his account ending in x4JFG, and bank statements from one Chase bank account ending in x4803. (Doc. 60, at 3, 4; Doc. 60-1, at 3-4).

3. On October 27, 2021, Plaintiffs' attorneys, through a third-party auditor, conducted a forensic audit of Horton's laptop, cell phone, two email accounts, one PayPal account, and one Shopify account. (*See* Doc. 60, at 3, 4, 5, 7-8).

4. At the Hearing, Plaintiffs' attorneys noted that the forensic audit produced over 25,000 records, which with additional filtering, Plaintiffs' attorneys

narrowed down to 14,000 records. Plaintiffs' attorneys then reviewed these documents for Horton's sales information.

5. As a result of this review, on November 8, 2021, Plaintiffs' attorneys asked Horton to produce bank statements for Chase Bank account ending in x2251, which Horton had previously failed to disclose according to the Contempt Order. (Doc. 60-1, at 3).

6. Also, on November 9, 2021, Plaintiffs' attorneys asked Horton to produce his Amazon account statements and other merchant account records, which he also had failed to disclose according to the Contempt Order. (*Id.* at 2).

7. Horton never produced his Amazon account statements or other merchant account records. Horton did produce his bank statements for his Chase Bank account ending in x2251. (Doc. 60, at 3).

8. At the Hearing, Plaintiffs' attorneys informed the Court that, in December 2021 and January 2022, when it became clear to Plaintiffs that Horton was no longer being cooperative in producing his sales information, Plaintiffs determined that it was expedient to send out third-party subpoenas to obtain the information Horton refused or failed to produce.

9. At the Hearing, Plaintiffs' attorneys informed the Court that they prepared and sent out twenty-four (24) third-party subpoenas in an attempt to collect Horton's missing sales information.

10. These subpoenas resulted in Plaintiffs finding Groom Ninja sales to retailers such as the Moody Mare Tack Shop, Toll Booth Saddle Shop, and Rod's Western Palace. (Docs. 60-9, 60-10, 60-11).

11. The subpoenas also resulted in Plaintiffs finding Groom Ninja sales related to Horton's Stripe.com account. (Doc. 60, at 8-9).

12. The subpoenas further resulted in Plaintiffs finding sales related to Horton's PayPal accounts ending in x5448 and x0741. (Docs. 60-6 and 60-7).

13. Finally, the subpoenas resulted in Plaintiffs discovering an additional Western Security Bank account ending in x0741 and connected to his PayPal account ending in x0741. (Doc. 60-7, at 10).

14. The discovery also resulted in Plaintiffs identifying a Walmart partnership with Groom Ninja that Horton failed to disclose. (Doc. 60-12). Groom Ninja animal grooming brushes with sawtooth blades are currently being sold through Walmart.com. (*Id.*).

15. Throughout January 2022, Horton ignored several attempts by Plaintiffs' attorneys to set his deposition date. (Doc. 60, at 3).

16. Then, on January 27, 2022, Horton requested that his deposition be held on either February 14th or 15th of 2022. (*Id.* at 4).

17. Plaintiffs agreed to the February 15, 2022 deposition date for Horton, they noticed Horton's deposition, and the parties jointly stipulated to extend the deadlines of the case to accommodate Horton's chosen deposition date. (*Id.* at 3-4).

18. Late on February 14, 2022, less than one day before his scheduled deposition, Horton contacted Plaintiffs' attorneys demanding, without any justification or excuse, that counsel reschedule his deposition. (*Id.* at 4). Counsel was willing to reschedule Horton's deposition but was not willing to cancel the noticed deposition until Horton agreed to new deposition dates. Horton refused to do so. Horton then failed to appear at his noticed deposition the following morning. (*Id.*; Doc. 60-2).

19. As a result of Horton's failure to appear at his noticed deposition, Plaintiffs were denied the opportunity to clarify the discovery and sales information in their possession, as well as discover any additional sales information related to Groom Ninja products sold in violation of the Permanent Injunction. (Doc. 60, at 5, 7, 10, 11-12).

***B. Horton's Sales of Product Violating the Permanent Injunction***

20. As presented by the Plaintiffs, Horton's sales of product violating the Permanent Injunction from August 28, 2019 to the present is as follows:

| HORTON'S SALES | |
|---|---|
| Amazon Pay | $5716.36 |
| Checks Deposited | $1983.86 |
| Olympia Trust | $5150.00 |
| Moody Mare | $957.50 |
| Toll Booth | $156.00 |
| Rod's Western | $1881.56 |
| Stripe | $20671.49 |
| PayPal Acct x4JFG and x5448 | $36827.58 |
| PayPal Acct x0741 | $316588.34 |
| Shopify | $40921.31 |
| **TOTAL** | **$430,854.00** |

(Doc. 60, at 12; Docs. 60-3 to 60-11).

21. At the Hearing, Plaintiffs' attorneys affirmed that Plaintiffs' calculation of Horton's sales is based on their review of:

a. The 14,000 documents from the forensic audit;

b. Horton's incomplete disclosures;

c. Horton's Chase bank accounts ending in x4803 and x2251;

d. Horton's PayPal accounts ending in x4JFG, x5448, x0741;

e. Shopify records, which hosts Horton's Groom Ninja website; and

f. The subpoenaed documents from Moody Mare Tack Shop, Toll Booth Saddle Shop, Rod's Western Palace, and Stripe.com.

(*See also* Doc. 60, at 12; Docs. 60-3 to 60-11).

22. Plaintiffs' calculation of Horton's Shopify sales includes $34,101.09 in invoiced sales from August 28, 2019 to October 1, 2021 (a period of twenty-five (25) months). (Doc. 60, at 11-12; Doc. 60-8). It also includes $6,820.22 in extrapolated sales to cover October 2, 2021 to March 14, 2022 (a period of five (5) months), which records Horton failed to produce. (Doc. 60, at 11-12). The extrapolated sales were calculated as follows:

$34,101.09 x 0.20 = $6,820.22

(*Id.*).

23. At the Hearing, Horton disputed including PayPal Account No. x0741 in the disgorgement of profits calculation. Horton did not submit any documents or evidence to support his assertions.

24. At the Hearing, Horton also claimed he stopped using PayPal Account No. x0741 several years ago. Plaintiffs' attorneys countered by showing that over seventy-one (71) logins for this account occurred from August 28, 2016 to October 24, 2021, and another login occurred on November 15, 2021, after the entry of the Contempt Order. (*See* Doc. 60-7, at 3).

25. Importantly, because Horton failed to disclose complete records to Plaintiffs, sit for his noticed deposition, or submit any evidence to the Court, further information about PayPal Account No. x0741 could not be ascertained by

the Court at the time of the Hearing, and Plaintiffs' claims regarding this account remain undisputed based upon the evidence presented.

### *C. Attorneys' Fees and Costs Incurred by Plaintiffs*

26. Prior to the Hearing, Plaintiffs submitted two Declarations of Eric D. Hone, who is counsel for Tipton and SleekEZ, showing that their incurred attorneys' fees and costs total $66,874.22 as of March 10, 2022. (Doc. 60-13; Doc. 61).

27. Plaintiffs submitted a third Declaration of Eric D. Hone, on April 11, 2022, with updated invoices through April 6, 2022, showing additional attorneys' fees of $12,803.00. (Doc. 63).

28. These fees included work done on behalf of Plaintiffs for the remaining post-Contempt Order discovery, preparation of the Application for Damages, and preparation for and attendance of the Hearing. (*Id.*)

29. Plaintiffs' total requested attorneys' fees equal $79,677.22 ($66,874.22 + $12,803.00).

30. The time and labor required for Plaintiffs' legal representation is laid out in the three Declarations of Eric D. Hone and the invoices attached thereto. (Doc. 60-13; Doc. 61; Doc. 63).

31. At the Hearing, Plaintiffs' counsel affirmed that the case presented novel and difficult issues because Horton's failure to cooperate and provide

complete sales records forced Plaintiffs to use alternative discovery methods such as an extensive forensic audit and sending out twenty-four (24) third-party subpoenas. Plaintiffs' counsel further affirmed that Horton's failure to keep organized and accurate business records also added to the difficulty in obtaining Horton's sales information.

32. At the Hearing, Plaintiffs' counsel affirmed that the skill requisite to perform the legal services properly for this case included the skills of an experienced commercial litigation firm. Plaintiffs' counsel further affirmed that those in the Hone firm with the requisite skill level for the work were staffed on this matter, with work being pushed to lower-billing attorneys and staff before higher-billing attorneys. Finally, to ensure no over-billing occurred, Plaintiffs' counsel significantly discounted Plaintiffs' legal invoices.

33. At the Hearing, Plaintiffs' counsel affirmed that the Hone firm has temporarily stopped onboarding new clients based on the firm's current workload being at full capacity. Plaintiffs' counsel affirmed the work required in this matter contributed, in part, to that decision.

34. At the Hearing, Plaintiffs' counsel affirmed that when his firm hired Shalise Zobell, counsel for Plaintiffs, in 2018, she had previously been an attorney with the Montana law firm, Crowley Fleck, in their Billings, Montana office. Tipton and SleekEZ were onboarded into Hone Law as clients when Ms. Zobell

joined the firm, and her Crowley Fleck rates carried over to this matter. These rates are significantly reduced based on what Hone Law, a Las Vegas, Nevada firm, customarily charges, but were consistent with rates in Billings, Montana in 2018. Those rates have carried to this present day without increase by Hone Law.

35. At the Hearing, Plaintiffs' counsel affirmed the time limitations imposed by the circumstances of this case were exacerbated because Horton failed to cooperate in discovery, produced incomplete sales records, did not maintain organized and accurate business records, and failed to appear for his noticed deposition.

36. The results obtained in this matter include a Motion for Order to Show Cause that was granted to Plaintiffs and a Contempt Order filed against Defendant. (Doc. 53). This included Plaintiff being awarded all of Horton's profits from his violating sales, punitive damages in the amount of twenty-five percent (25%), and attorneys fees and costs. (*Id.* at 6-7).

37. At the Hearing, Plaintiffs' counsel affirmed that he had over twenty-years' experience litigating as a commercial attorney and that the other attorneys billing on this matter likewise had significant commercial litigation experience.

38. At the Hearing, Plaintiffs' counsel affirmed the "undesirability" of the case was not a factor in Plaintiffs' attorneys' fees.

39. At the Hearing, Plaintiffs' counsel affirmed that Ms. Zobell had represented Tipton and SleekEZ for several years prior to joining Hone Law and that Hone Law had represented Tipton and SleekEZ on various matters from 2018 to the present.

40. At the Hearing, Plaintiffs' counsel affirmed that Hone Law has been awarded their full attorneys' fees and costs in other matters, including matters before other district courts in the Ninth Circuit and in Nevada state, when such attorneys' fees and costs were allowable under the law. Plaintiffs' counsel further affirmed that the fees and costs requested in this matter are reasonable for a contempt proceeding and disgorgement of profits matter.

## CONCLUSIONS OF LAW

The Court concludes as follows:

1. Tipton and SleekEZ bore the initial burden of establishing Horton's profits from August 28, 2019 to the present. *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1005 (9th Cir. 2004).

2. Once Horton's profits were established, Horton had "the burden of documenting any legitimate offsets." *Id.*

3. Tipton and SleekEZ carried their burden. Based on Horton's failure to cooperate and disclose complete and accurate records, Tipton and SleekEZ conducted a forensic audit, reviewed over 14,000 of Horton's records, and sent out

twenty-four (24) third-party subpoenas. (Findings of Fact, at ¶¶ 3, 4, 9). They also attempted to depose Horton, only to have him refuse to appear even though he chose the deposition date. (*Id.*, at ¶¶ 15-19).

4. Tipton and SleekEZ's sales calculation is based on the discovery they conducted, which translated to over 400 pages of briefing and exhibits being filed in their Application for Damages to the Court. (Docs. 60 to 60-12).

5. Plaintiffs' sales calculation is based on Horton's bank statements from two Chase bank accounts (x4803 and x2251), statements and account information from three PayPal accounts (x4JFG, x5448, and x0741), invoices from three retailers (Moody Mare Tack Shop, Toll Booth Saddle Shop, and Rod's Western Palace), Shopify records, and Stripe.com records. (Findings of Fact, at ¶¶ 20-26).

6. Therefore, the Court concludes that Tipton and SleekEZ proved by a preponderance of the evidence that Horton's sales for the relevant time period totaled $430,854.00.

7. The burden shifted to Horton to document any legitimate offsets from Plaintiffs' calculation. *Jerry's*, 383 F.3d at 1005.

8. Horton failed to file an opposition to Plaintiffs' Application of Damages. Horton failed to prepare or submit any documents or other evidence to the Court showing legitimate offsets prior to or at the Hearing.

9.     Therefore, the Court concludes that Horton failed to carry his burden to document legitimate offsets to Plaintiffs' disgorgement of profits calculation.

10.    Punitive damages were awarded to Plaintiffs in the amount of a twenty-five percent (25%) increase to the disgorgement of profits number. (Doc. 53, at 6, ¶ 4). This amounts to $107,713.50 and is calculated as follows:

$430,854.00 x .25 = $107,713.50

11.    Under Ninth Circuit precedent, attorneys' fees are to be calculated using the lodestar method. *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1076 (9th Cir. 2021). When awarding attorneys' fees and costs, district courts are also required to consider some or all of the relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975). *See Carter v. Caleb Brett LLC*, 757 F.3d 866, 868-69 (9th Cir. 2014).

12.    Based on the three Declarations of Eric Hone, the exhibits attached thereto, and arguments before the Court at the Hearing, the Court concludes that:

  a. The time and labor required for Plaintiffs' legal work was reasonable;

  b. The case presented novel or difficult issues of post-judgment discovery given that Horton kept poor business records, was uncooperative, and produced incomplete sales information to Plaintiffs;

c. The skill requisite to perform the legal services for this matter properly includes the skills of an experienced commercial litigation firm;

d. Those at Hone Law with the requisite skill level for the work were staffed on this matter, with work being pushed to lower-billing attorneys and staff before higher-billing attorneys;

e. Significant reductions were given to Plaintiffs' legal bills to further ensure no over-billing took place;

f. The customary fees charged by Hone Law were based on rates of local Montana firms in 2018, and were reasonable, if not on the lower end of the rates in the market;

g. Plaintiffs were charged fixed-rate fees;

h. Time limitations imposed by the circumstances in this case were exacerbated by Horton's uncooperative conduct;

i. Hone Law has obtained the results sought for by Plaintiffs in this matter, justifying the attorney work conducted to date;

j. Hone Law has experienced, able attorneys of quality repute;

k. The undesirability of the case did not factor into Plaintiffs' attorneys fees;

    l. Plaintiffs and their attorneys have had a significant relationship lasting many years; and

m. The award of full attorneys' fees and costs is in keeping with other similar awards to Hone Law as well as similar disgorgement of profits cases. *See Coleman Co. v. Holly Mfg. Co.*, 269 F.2d 660, 662 (9th Cir. 1959) (awarding $130,000 in attorneys' fees for disgorgement of profits case).

13. Therefore, the Court concludes that the requested attorneys' fees in the amount of $79,677.22 are reasonable and should be awarded to Plaintiffs.

**ORDER**

For the foregoing reasons, the Court hereby orders:

1. Plaintiffs are awarded, and Horton is required to disgorge profits in the amount of, $430,854.00.

2. Plaintiffs are awarded punitive damages in the amount of $107,713.50.

3. Plaintiffs are awarded attorneys' fees and costs in the amount of $79,677.22.

4. Therefore, a total judgment should be entered against Defendant and for Plaintiffs in the amount of **$618,244.22**.

DATED this 31st day of May, 2022.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge